UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                                 :

NATIONAL UNION FIRE INSURANCE COMPANY :
OF PITTSBURGH, PA,                    :    05 CIV. 2068 (DLC)
                  Plaintiff,        :
                                   :    OPINION & ORDER

       -v-                            :

JOHANNA TURBI de ANGUSTIA, Individually :
and as Representative of the Estate of :
Ruben Dario Augustia, RAMON MATIAS     :
ANGUSTIA and CRISTINA FELIZ, or in the :
Alternative JOHANNA TURBI de ANGUSTIA, :
Individually and as Next Friend of     :
Ruben Dario Angustia,                  :

                  Defendants.       :
------------------------------------------X



Appearances

For Plaintiff:
Eugene Wollan
Jeffrey S. Weinstein
Victoriya Blackhall
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

For Defendants:
Daniel S. Cahill
Cahill/Wink LLP
444 Broadway, Suite 300
Saratoga Springs, NY 12866

DENISE COTE, District Judge:

    Defendants in this action for a declaratory judgment have moved to dismiss under Rule 12(b)(2), Fed. R. Civ. P., on the basis that the Court lacks personal jurisdiction over the action. In addition, they invoke the discretion of the district court, as described in <u>Brillhart v. Excess Insurance Co. of America</u>, 316 U.S. 491 (1942), and <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277

(1995), to stay or dismiss a declaratory action during the pendency of a state court proceeding addressing the same issues. For the reasons stated below, defendants' motion is granted, and the action is stayed.

Background

All facts are drawn from the complaint, unless otherwise noted. This lawsuit stems from a tragic event. On October 16, 2002, Ruben Dario Angustia ("Angustia"), an employee of Hanover Compression Co. ("Hanover") who was working in Venezuela, was kidnaped by guerillas affiliated with Revolutionary Armed Forces of Colombia, a Colombian terrorist organization better known by the Spanish acronym "FARC." Although Hanover participated in ransom negotiations with FARC, and unsuccessfully attempted to deliver ransom money to Angustia's captors, Angustia was never seen or heard from again. Hanover had taken out a "Corporate Kidnap and Ransom/Extortion Insurance" policy (the "Policy")[1] from National Union Fire Insurance Co. of Pittsburgh, PA ("National Union") that covered all of Hanover's directors, officers, and employees, including Angustia. The policy provided Hanover and certain "Insured Persons," including relatives of directors, officers, and employees, with coverage for ransom monies and expenses arising from kidnaping, wrongful detention, extortion, or hijacking. It also provided $250,000 of coverage

---

[1] The Policy is attached as an exhibit to both defendants' memorandum of law and plaintiff's opposition memorandum.

for "Death or Dismemberment sustained by an Insured Person(s)" during a kidnaping, wrongful detention, extortion, or hijacking. The Policy contained the following "Choice of Law and Forum" clause (hereinafter referred to as the "Forum Selection Clause"):

> The construction, validity, and performance of this policy will be governed by the laws of the U.S.A. and the State of New York. The Company and the Insured hereby expressly agree that all claims and disputes will be brought for adjudication either in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

After Angustia's kidnaping, National Union paid Hanover $250,000, and in return, Hanover executed a release (the "Release") barring any further claims against National Union by Hanover or other Insured Persons under the Policy.

In 2004, Angustia's wife, Johana Turni de Angustia, and his parents, Ramon Matias Angustia and Cristina Feliz (the "Angustia Relatives"), the defendants in the present case, filed a lawsuit against Hanover in Texas state court (the "Texas Action") alleging negligence and gross negligence in Hanover's handling of ransom negotiations and delivery of ransom monies after Angustia had been kidnaped.[2] On February 1, 2005, the Angustia Relatives modified the Texas complaint to include National Union as a defendant.[3] They pleaded a claim of breach of duty of good faith

---

[2] The Angustia Relatives also named a crisis consulting firm as a defendant in the Texas action.

[3] The Texas complaint actually misnamed National Union as "American International Underwriters Corporation A Member Company of American International Group, Inc. A/K/A AIG Worldsource." According to defendants' memorandum of law, National Union is "an AIG entity."

3

and fair dealing against National Union and claims under the Texas Insurance Code and the Texas Business and Commerce Code. National Union has moved in the Texas Action to dismiss or stay the claims against it on the ground that the Forum Selection Clause mandates that the Angustia Relatives' claims against National Union be adjudicated in New York.

On February 14, 2005, National Union filed the present action against the Angustia Relatives, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.[4] It seeks declarations (1) that defendants must proceed with any direct action against National Union in the U.S. District Court for the Southern District of New York; (2) that the Texas Action does not allege a claim for "Covered Losses" under the Policy; (3) that any claims against National Union by the defendants premised on National Union's alleged duty to negotiate with the kidnappers are beyond the scope of the coverage provided under the Policy; (4) that National Union has no liability to Insured Persons in connection with any and all claims arising from the incident and any legal actions arising therefrom; and (5) that unless the defendants are enjoined from seeking remedies against National Union, National Union will suffer irreparable harm and injury as a result of the cost, time, and inconvenience in having to enforce specifically the terms of the Release.

---

[4] All Angustia Relatives are citizens of the Dominican Republic who reside in Texas. National Union is incorporated in Pennsylvania and maintains its principal place of business in New York.

4

On June 24, 2005, defendants filed a motion to dismiss. They maintain that the Forum Selection Clause does not apply to them and, moreover, that they have no contacts with New York sufficient to subject them to personal jurisdiction under N.Y. C.P.L.R. 302(a)(1), New York's long-arm statute. In addition, they ask the Court to exercise its discretion not to hear this case, as described in Brillhart and Wilton.

## Discussion

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis supplied). The DJA "by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action they would otherwise be empowered to hear." Id. (citing, inter alia, Wilton, 515 U.S. at 282-83). In deciding whether to hear a declaratory judgment action, a district court should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether

5

a judgment would finalize the controversy and offer relief from uncertainty." Id. (citing Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir 1969)). As the Dow Jones court also noted:

> Other circuits have built upon this test, to ask also:
> (1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata';
> (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

Id. (noting that the district court had cited the "five tests" listed above and affirming its decision not to exercise declaratory jurisdiction).

In addition to reiterating a district court's discretion to refuse to hear a declaratory judgment action, the Supreme Court in Brillhart and Wilton announced a special caveat for situations in which a parallel state court proceeding addresses the same issues: "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permit[s] the federal declaratory action to proceed." Wilton, 515 U.S. at 283 (first alteration in original) (quoting Brillhart, 316 U.S. at 494). In Wilton, the district court had stayed an action in which insurers sought a declaratory judgment that they had no duty to defend or indemnify certain holders of commercial liability insurance policies pending resolution of a later-filed lawsuit in state court. Id. at 279-80. The Wilton court

rejected a proposed test under which "district courts must point to 'exceptional circumstances' to justify staying or dismissing federal proceedings," id. at 281, emphasizing a district court's "unique and substantial discretion in deciding whether to declare the rights of litigants." Id. at 286. The Court noted that a district court should consider "the scope of the pending state court proceeding and the nature of defenses open there," taking into account "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Id. at 283. "When all is said and done, we have concluded, 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" Id. at 287 (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 243 (1952)).

In its complaint, National Union requests that the Court issue a declaration that defendants must proceed with any direct action against National Union in the U.S. District Court for the Southern District of New York, as well as declarations addressing the merits of the Angustia Relatives' claims against National Union in the Texas Action. Whether the Forum Selection Clause in the Policy obligates defendants to litigate in a New York court is an issue that is already the subject of a pending motion to dismiss or stay before the Texas state court in the action filed

there by the Angustia Relatives. Should the Texas court retain the claims against National Union, plaintiff effectively asks this Court to participate in a "race to res judicata" for adjudication of those claims. See Dow Jones, 346 F.3d at 359. If the wheels of Texas justice turned more swiftly than those of this Court, the Texas judgment would stand, according to principles of res judicata. "Where there is a final state court judgment, a federal court looks to that state's rules of res judicata to determine the preclusive effect of that judgment." AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003). Under Texas law, "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996). "It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." Id. The present action would almost certainly be dismissed on the basis of res judicata should the Texas action be resolved first.

It would be unseemly and unnecessarily duplicative for this Court to participate in such a race to res judicata. This Court lacks the power to put a stop to the claims against National Union in the Texas Action in the interim, before a judgment on

the merits is reached in the present case, even if it should disagree with an assessment by the Texas court that the Forum Selection Clause does not bind the Angustia Relatives. The Anti-Injunction Act, 28 U.S.C § 2283, forbids a federal court from granting an injunction to stay state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Id. The third exception, known as the "relitigation exception," allows a federal court to protect the res judicata effect of its judgments but cannot be used to prevent simultaneous state court litigation before res judicata or collateral estoppel attaches to the judgment of the federal court. "The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988).[5] Moreover, "[t]o qualify for preclusion, a judgment must be valid, final, and on the merits." 18A Charles A. Wright et. al., Federal Practice and Procedure § 4432 (2d ed. 2002). This Court's determination that National Union has alleged facts sufficient to support personal jurisdiction on the basis of the Forum Selection Clause would not be a final

---

[5]The exception for injunctions in aid of jurisdiction is not relevant to this case, as it applies almost exclusively to actions in rem. Ret. Sys. of Ala. v. J.P. Morgan Chase & Co., 386 F.3d 419, 426 (2d Cir. 2004).

9

determination on the merits providing a basis on which to enjoin the Texas Action, or on which National Union could raise a preclusion-based defense in the Texas Action. Cf. New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) ("[A]t the initial stage of litigation, a party seeking to establish jurisdiction need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction.").

The Supreme Court has noted that "inefficient simultaneous litigation in state and federal courts on the same issue . . . is one of the costs of our dual court system." Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 524-25 (1986). Where a court has discretion whether or not to hear a declaratory judgment action, however, it seems prudent to decline to create "inefficient simultaneous litigation." Given the dueling postures of National Union's declaratory judgment action and the Texas case, any unnecessary involvement by this Court has the potential to "increase friction between sovereign legal systems or improperly encroach on the domain of a state . . . court." Dow Jones, 346 F.3d at 359.

For the ease of the parties should the Texas court rule that the Forum Selection Clause binds defendants, and that their claims against National Union must therefore be pursued in a New York court, this action is stayed, rather than dismissed. As the Wilton Court noted,

> where the basis for declining to proceed is the
> pendency of a state proceeding, a stay will often be

> the preferable course, because it assures that the
> federal action can proceed without risk of a time bar
> if the state case, for any reason, fails to resolve the
> matter in controversy.

Wilton, 515 U.S. at 288 n.2.

Conclusion

Pursuant to the discretion of the district court to stay or dismiss a declaratory judgment action, as set forth in Brillhart and Wilton, this action is stayed pending a decision in the Texas action on National Union's motion to dismiss or stay.

SO ORDERED:

Dated:   New York, New York
         August 24, 2005

_____
DENISE COTE
United States District Judge